Matthew Knepper appearing for appellants. Eddie Jimenez appearing for appellee. I believe Mr. Jimenez is present in the courtroom. He is. Just a second. Knepper, do you wish to reserve some time? I do. I wish to reserve five minutes, Your Honor. All right. Thank you. You may commence. Good morning, Your Honors, and may it please the Court. As you know, I'm Matt Knepper. I represent the Myers v. Appellants in this case. The matter that's before the Court turns on not a dispute as to whether Nevada law applies. The briefing below and before the Court on appeal, both sides agree that it does. The question is whether, as applied, the evidence that LVMB supplied in support of its proof of claim passes muster under NRS 97A160. The answer is it doesn't, not procedurally, not substantively. So the first issue is going to the statute itself. Number one, we're looking for a reversal because 502B1 says that a claim will not be allowed if it fails to comply with any applicable law. 97A, in this case, is that applicable law. Can I stop you for one second? I think we're going to be on the same page on a lot of this. It's sort of two levels here. There's a test for whether a proof of claim on its face is sufficient. That's a rule test, correct? That's 3001. Right. And that's not what you're arguing about. You're arguing when you get below, when you get to the actual merits, when you get to a 502B business reason to disallow a claim, at that point, you look to governing state law. That's right. Right? That's right. One other little thing I'd like you to address. I mean, technically, isn't the language that pertains here that, you know, once there is a presumptively valid proof of claim, the other side is supposed to come forward with, quote, evidence, close quote, to demonstrate that it's not valid? I mean, you didn't really supply evidence here. What you supplied was a legal argument. So is there any, do we have to cross any, do we have to sort of reconcile that in any way, or do you have another response for me on that one? Your Honor, the lack of evidence sufficient to enforce their claim against debtors, because we're talking really about two sides of the issue. On the one hand, there's the UCC3 analysis. That's not an issue on appeal. Chain of assignment, do they have entitlement to enforce, et cetera. Then there's the other side, the question of establishing liability against debtors. If they don't, I mean, a part of what is sort of inherent in your question is whether the debtors have a duty to prove a negative, that they're not liable. It's all a burden question. I agree with you. And so when the burden shifted to the debtors, they absolutely relied on the statutory basis. And that's when, you know, we sent the 30-day letter detailing the 97A160 issues and asking, do you have the evidence, the authenticated evidence, of whether that would establish either the written application for the credit or evidence that the debtors had, in fact, incurred and then paid for the charges. The evidence that we're, you know, asking for here, aside from the fact that the statute says that we get it or that, said differently, they can't bring a claim in state court and prevail on it, even a claim that results in default judgment without evidence sufficient to establish one of the two ways they can establish liability. Let me stop you right there. Sure. Because that's my question for you. Would they prevail on a money-due-on-account claim on default in state court and not provide this evidence? No, they can't. Thank you for the question, Your Honor. They can't. The next section after 97A160 is 97A165. And what 165 says, it's subsection 1B2. It says that no judgment, and I'm reading from the statute, no judgment in favor of the purchaser of credit card debt, including without limitation of default judgment, may be entered unless, among other things, the purchaser of credit card debt is satisfied with standards approved, set forth, in subsections 1 and 2 of section 160. So, no, they can't even establish a default judgment without that evidence. And the thing is, is that, you know. It's because they're a credit card purchaser, not credit the original holder. That's correct. I think that's, yeah, that's in the plain language of that particular provision. It says, you know, the purchaser of credit card debt as opposed to the issuer itself. If the issuer is bringing the action, and it's very rare that I've ever seen that, at least in the credit card setting, then I think there's a different question, and that question is whether 165 applies to them at all, because it doesn't contemplate the issuer in that language. But it's reasonably clear that we're relying on state law in the bankruptcy process. Once you get past this question of is the proof of claim by itself sufficient, the bankruptcy process has to defer entirely to state law, in my mind. That's right. That's right. It's purely a state law question. Okay. That's right. And so what we get to then is the question of whether 97A was satisfied in any respect. There's a procedural question, that is, is the evidence authenticated? And then there's the substantive question, that is, does the evidence presented, you know, establish either of the two-part tests under 161A? And the answer is no to both. The only evidence that was provided that might come close to establishing liability here would be the second clause under 161A, which is the evidence that the debtors had incurred the debt and made payments thereon. The issue on the procedural side is that the evidence that they provided, the account statements, didn't appear, not in response to our 30-day letter, not in the amended proof of claim, but in the opposition to the objection. It's unauthenticated. In the record at 37 of 133, you can take a look at it, but it doesn't have anywhere preceding it or after, or an affidavit of somebody with, you know, knowledge of the records, you know, authenticating those statements. So from a procedural standpoint, and given that there really is no dispute between the parties that 97A applies, at some level, we already have, you know, a significant defect. And on that basis alone, I think the – I'm not sure if there's really a disagreement here. When Mr. Jimenez takes the lectern, we can ask him. But, I mean, I think on its face, it looks as if the authentication is talking about something else. It's talking about the transfer from one credit to another. Is that your reading of it as well? It's not talking about the underlying documents. No, that's not my reading of it. When we're talking about the chain of assignment, certainly those documents need to be authenticated, but we're in UCC-3 at that point. And that's just not a dispute between the parties. The question here is whether the authenticated evidence of either – Yeah, yeah, that's what I was trying to say. The authentication, to the extent there is one, goes to how this got transferred. It doesn't go to what the underlying documents say. I misheard you. I think so. And then Mr. Jimenez can tell me what he thinks about that. Okay. And, of course, LVMV did say in the answering brief that they cited to the opposition in the case below and said that that detailed LVMV's compliance with NRS 97-A-161A regarding their standing to enforce. I took another look at the opposition brief itself, and we're looking at the record now of 32 of 133, and this is the totality of their argument there. They said here, LVMV provided the debtors' counsels with photocopies of the account statements prior to the filing of the objection. The requirements of 97-A have been satisfied. That's it. That's the totality of the argument there. Can I ask you a bottom-line question? Sure. If we agree with you about the authentication, what ought to happen? Should it go back to the bankruptcy court for a further hearing to see if they can supply authentication, or do you just win? Well, candidly, Your Honor, I think we should just win. We took this appeal up, but we think this is a day in the life of LVMV. Candidly, I understand why you'd say that. Fair enough, but they've had several bites of the apple. They had the opportunity to respond with the authenticated evidence when we sent the 30-day letter. There's no dispute between us that the prima facie requirements under 3001C3 were met here in the initial proof of claim. But when we sent the 30-day letter, they could have given us that authenticated evidence. That would have been the end of it. Their custodian of records sent us an e-mail saying, here's the account statements, but it wasn't tantamount to that being an authentication that would meet the requirements under FRE 901 or the requirements under the statute at issue here. And then when they filed the opposition, they had a chance to authenticate it again, but they didn't. And now we're on appeal. Enough is enough. This is a 100% plan. This is a 100% plan that they want to get paid more than $7,000 for. If they want to get that $7,000, they need to do the work. And that's not what happened here. So just on the procedural component, that should – In fairness, you did list the claim at $7,326, but disputed, right? In the schedule? Yes, in the way that – but there's a – I understand. We pull the credit reports. If they're reporting it, that's fine, but that doesn't mean our clients necessarily recognize the debt. But we did dispute it. That's really what she latched onto is she always treated it like an admission. Well, we checked the dispute box. When we go through the petition review, we talk about each of the accounts with them. And if they don't recognize that they have a reason to question it, then we dispute that box. That's what happened here on the schedules. So it's not that they didn't dispute it and then later thought that there might be an angle here. They disputed it right out of the gate. I'm just trying to get into her analysis. I don't disagree that it was probably disputed. Right. And so we'll – and that raises one final point, at least for now. I might reserve the rest of my time after this. When you take a look at the judgment, it's somewhat difficult to ascertain what the findings of fact or conclusions of law were. I paraphrase, but it effectively said, for all the reasons stated in the opposition brief. But the opposition brief, of course, never really addressed this issue in any substantive way. Just a passing reference, the one that I've already brought to the court's attention. So I'm not sure precisely where the court ultimately settled its decision. I'm going to reserve the remainder of my time, and I'll also admit to you that I don't have a view of the timer on the court's clock. For whatever reason, it's a flat screen. I'm only seeing myself. How much time do we have left? Thank you. I'll go ahead and reserve. Your timekeeping was very good, actually. It was great. Thank you. Mr. Jimenez. Yes, may it please the court. Thank you, Your Honor. Teddy Jimenez on behalf of the appellee. Your Honor, I think that you hit the nail right on the head from the beginning. What we have here is a lot of admissions. We have appellants who admit that they apply for this credit card. They admit they didn't pay on this credit card. They admit in their schedules that it's debt owed. What we have here, basically, Your Honor, is what we often refer to as a formal objection. There may be some underlying undertones about a Nevada revised statute, but when we get down to it, what we have here is admissions in sworn schedules. We have value of the appellant's decision. Let me ask you a question. If you were in state court and Mr. Knepper came in and said, look, they have to satisfy this standard, could you win the state court saying, well, but they've sort of admitted it? Would that be a winning argument for you in state court? Your Honor, it would have to be guessed. I mean, I think it would have to be based on what I would be using as the admissions. If it's in a sworn document, like the bankruptcy schedules where they list this debt, I would think so, and I would think if it was more at a state court argument, there would have been more discovery. Okay, and you would have gotten there. For sure. And maybe at some point you would have given somebody an authenticated version of the document. For sure. Can I skip to something else? Are you telling us that you did provide an authenticated version of those documents, or are you saying that that's not important or we should infer that? I'm telling you, Your Honors, that there is a presumptive claim here, and the burden was on the appellants to rebut that. They never did that. And so the burden really never shifts to my client to submit or produce. Then I have to ask a question. If it was at a state court and all you submitted was what you have in the proof of claim. Your Honor, I would say what's in the proof of claim, yes, I believe so. I do. The state would have correctly done that without the authentication. I believe that what's included in the proof of claim is it shows a clear assignment of the debt, when it was purchased, the bill of sale, the transfer, the assignment, and then it also includes the account statements where it shows that this debt came over. It's enough information to include the account number, it includes the debtor's name, and so I think that is enough information provided to the court to do that. But clearly, I mean, wasn't the legislature worried about something else when they had this other requirement of authenticated statements? I certainly understand what you're saying, that, you know, absent that, it kind of looks like nobody's really disputing there was a debt here and how much. But isn't the debtor entitled to whatever that additional requirement is? I mean, clearly the legislature is worried about something. I agree, Your Honor. They're worried about making you sort of dot your i's and cross your t's. I agree, Your Honor. Okay, so what do we do with that? And in this case, the documents that are in question, whether it was a writing under NRS 97A, and as the appellants state, it's either the application or it's some proof that they were charged on the account. Right, and the application is not relevant because it was online and it's off in the ether someplace or something? That's correct, Your Honor, although when they did make the application, what was sent to the appellants was the credit card agreement and the terms and conditions. So they did send that to them, and that was provided to the appellants. But are we fair in concluding that you're not disputing that you did not separately authenticate the account statements? Is that fair? I think it's fair to say that there may be authentication issues. However, these statements and this agreement were provided to the court. The court, after the hearing, took a month to review everything at this time. And by the way, you should be flattered because she simply accepted your brief as her findings, so that's rare. Those are the easiest ones, Your Honor. Well, they are at trial level maybe, but maybe not later. But it does create a muck here.  I get that. There's a theme. But I think, Judge, you made a good point about, well, if we do reverse this, what's going to happen? Well, what's going to happen is we're going to go, we're going to authenticate these statements because they're obviously the city diamond preferred card that they applied for. They obviously do not object that they incurred it. Okay, then I'm with you on that. Can we kind of play this out through the claims process? It's an unusual process, and it's kind of iterative, and you keep coming back and doing things, and having lost an objection on one gun doesn't mean you can't make it on another. So, I mean, is there a result here? If we were to agree that we need to remand this because of the failure of authentication, is it your view that the next thing that should happen is there should be a further hearing? You should have an opportunity to provide the authentication? My first position, Your Honor, is it would not need to be remanded for that because when they did— Let's say we did, okay, just for fun, just for process purposes. If we did, is it your position that you would get, at that point, you'd have an opportunity to go ahead and supply the authentication? Yes. Well, let me take it further. I mean, is the remedy for that for you to pay something to the appellant here who arguably filed an appeal, they got that part right? Is this an attorney's fees issue that can be resolved at the bankruptcy court? To the extent there's a remedy to that? Does that make sense? I don't know if I'm following the logic all the way, Your Honor. We're remanding. Theoretically, okay, we're remanding, and we're remanding on the basis of no authentication. That's probably not hard to do once you have your eye on that ball. You do it. If the other side is complaining and saying, well, they had five bites of the apple here, is a response to that that maybe there's an attorney's fees award involved? My response would be that I wouldn't be entitled to those because I don't believe they're valid parties. All right, maybe I'm speculating too much. Your Honor, our position would be that when these statements and this credit card agreement was provided, the appellants then had an opportunity to object to that evidence, whatever way they wanted to. They didn't. There was no formal objection to the judge considering these statements or this credit card agreement. Fair enough. It's not that they weren't admissible as such, but the question is, what were they? Were they authenticated? And the answer is, I mean, the answer may be they weren't, right? Correct. So what I'm trying to suggest here is if the other side is saying, look, if you are to reverse this, that's done, we just win and we all go home. If your argument is, no, we should get another bite of the apple, if they're saying that's not equitable because they had five chances they didn't do it, I guess what I'm speculating is what would the bankruptcy court be doing at that point from your view and how would she do it? My view, Your Honor, is the bankruptcy court would maybe be clarifying the record that we should have had on this appeal. And I think what the court would do then is say, I considered all the evidence before me and the evidence part of it. You may claim there was no objection to the authenticity. But I considered it for whatever merit it had. And I reviewed these statements and I reviewed this agreement. And based on everything that I reviewed, I still find that there was not sufficient evidence to rebut the presumption of the validity of this claim. No, I'm springboarding, which is going back to something that Judge Lepper said. He said, well, you know, should we remand or should we, you know, you're done. Just say it had to be authenticated, it wasn't finished. You would be arguing in those circumstances. In those circumstances, yes, Your Honor, because I would argue that the review would not be a de novo review. It would be clear error based on application of statute or rule. And the statute being application of 502 NRS 97 and rule 3001. And we would be bankruptcy court to decide. I'd say, no, I'm not going to require authentication, and here's the reason I'm going to do it. I'd say just authenticate it, or she might do any number of things that she had, I think. Correct. All of those things, she could make her determination on that. Okay. So you would say in contradistinction to what he's arguing, which is that we should end it here. If there's error, the decision maker on where it ends is the bankruptcy court. Correct. Based on the clear error standard review rather than a de novo review. And she may come to the same answer, but that would be for her to decide. Correct. Yes, Your Honor. I guess the way, maybe I look at it in a different way. I look at this case more of like of In re Heath or In re Campbell, the progeny that comes from the BAP. And, you know, In re Heath came out of the central district with Judge Riblett. And then In re Campbell came out of the southern district with Judge Myers. And then Judge Montali was the decision, was the writer of the opinion for the BAP. And that was more of a, I think Judge Montali during that time in 2005 was saying, we have a lot of things going on with proofs of claim. And we have a lot of other things we're dealing with. It's 2005, I remind you. And so we don't have time for people to come in today. We don't argue that we owe the debt or that we took out the debt or anything like that. We're here. We say we did it. All we're saying is form over substance. Where's the writing? The court in Heath said, even if the writing is not available, if all you're coming in and saying is that they didn't prove it, that's not going to be enough to disallow a claim. Well, I think those cases stand for the proposition that it may affect the privation validity. You may not have that presumption, but you've still got to do something to say it's not a viable claim. And here I think we're beyond, you know, they're saying you've got the presumption. They conceded the presumption is in your favor, I think. They're saying there's a specific statute, which wasn't addressed in those earlier cases, that required you to do something. They're saying we listed the debt. It was on a credit report. We listed it as disputed. So it's not an admission to my mind. That's what disputing it means. I'm not admitting it. And all we want is the authentication that state court allows. And they're telling me you couldn't get a default judgment in state court without that authentication. I think that's the, you know. And I guess, Your Honor, our position would be that it was provided, that the evidence that was provided, the court did consider it, whether it was authenticated or not. Obviously we don't have finding facts and conclusions of law for us to refer to in the record. But the court did consider that for a month and came back and said, for all the reasons, everything I reviewed in this case, I find for the appellees. And, Your Honor, that's what we're asking the court to do today, is to affirm that court's decision and find for the appellees. Thank you. Okay. Thank you very much. Thank you very much. All right. Mr. Knepper, you've got four minutes and 24 seconds for additional response. Okay. And I think I can be brief in summary, because either the court agrees that we needed to have authenticated evidence and we didn't get it, or it doesn't. The question of what the proper, I don't know if remedy is the appropriate, but the proper outcome, if remanded, you know, the reality is that, you know, whether, I don't know where I'm at on that. The attorney's fees, if that was something that the court ordered be considered below as a way to, you know, keep my clients whole for having to hesitate to show up, then it makes sense. But at the same time, we can avoid all of that simply ending it here. And the thing is that I don't know what other evidence they're going to provide besides the account statements. But when you get to the substance of 161A, the reality is that the account statements, which is all they've produced at this point, they haven't indicated that they have any other evidence that they can provide, but that is the account statements are insufficient under the plain language of the statute. And the reason is because when you get to 161B, what that says is that the account statements on their own are sufficient to establish the amount of the debt, and in this case the claim. But that language, the account statements, is very specific and very specifically couched in subsection B. Excuse me, yeah, subsection B. But in subsection 1A, what we have is evidence that is sufficient to establish that debtors incurred the debt and paid on that debt. That's different than the account statements. And one of the canons of construction that this court follows is the canon of meaningful variation in a statute. If the legislature had meant that the account statements, the authenticated account statements for that matter, could be more than simply evidence of how much is owed on the debt, then they would have said so when they talked about the evidence sufficient to establish the liability, setting aside the amount owed. And they didn't. They kept that much more specific to the idea that the evidence has to show that they incurred the debt, that they spent money to pay the debt. What could that look like? Image checks. It could be credit card or debit card payments that are paid in the name of the debtors. It could be an ACH payment, something along those lines. Can I ask you a question? Sure. Are you suggesting that it couldn't be a series of account statements over months that just reflected payment thereon, charge thereon? That by itself wouldn't be enough under the statute in your view? You'd have to have some independent evidence of the means of payment? I think that's right. I think that's right because as I look at the statute, I just see the inconsistency in the language. When the legislature meant to say account statements, it said it. And when it meant to say something else regarding evidence of the debt and, you know, the payments thereon, maybe the account statements could form a portion of that. That is the number of charges. But the question is what about evidence of the payment? I'm sorry. I'm sorry, Your Honor. I didn't hear that clearly. It's simply subpoenaing your client's bank records under your theory. Yeah, I think that's right. I think what we're talking about is theoretically, you know, an evidentiary process. I may have missed it, counsel. If that precise argument was made in the bankruptcy court, I don't remember it. If you did, great. You certainly preserved it. But I don't remember that being argued. Well, I'm using those. I was thinking about what evidence would fit that description. That is, the evidence of the charges incurred. I am. But I guess my question is, did you argue in the trial court that the account statement is even if authenticated? Yes. I don't remember that. Yes, yes. I could be wrong about that. I'll go have a look. Thanks. Okay. Yeah, I can. And I'm pretty sure I can find it in the opening brief. All right. Okay. You've got 12 seconds, so I'd say. Oh, well, then with that, Your Honors, I appreciate your time today, and I'll just go ahead and conclude. Thank you. Thank you very much. Well done. And we will be in recess, and I'm afraid that my heart will get us out of this place in perhaps a few minutes. And be gracious. Thank you very much. Thank you.
judges: Taylor, Lafferty, and Brand